■ In the Matter of PARIS M., a Person Alleged to be a Juvenile Delinquent, Appellant. [630 NYS2d 732] —Order, Family Court, Bronx County (Richard Ross, J.), entered April 8, 1994, adjudging respondent a juvenile delinquent for having committed acts which, if committed by an adult, would constitute the crimes of assault in the second degree and reckless endangerment in the second degree, and placing him on probation for 18 months on condition that he attend school regularly, attend counseling and attend an after school program, unanimously reversed, on the law, and the petition dismissed, without costs.

The complainant testified that at approximately 9:15 P.M. on September 6, 1993, she was standing with a friend underneath the elevated subway platform of the No. 4 train at 176th Street and Jerome Avenue. She and her friend were attempting to hail a cab. After a passing city bus almost hit them, they were forced back on the sidewalk and heard laughter. She looked up and saw three boys laughing at her from the platform above. The lighting conditions were bright. The boys were leaning over the platform and she could see them from their chests to their faces. Respondent was wearing a baseball cap and a white shirt. One of the boys was wearing a blue shirt and the other was wearing a dark green sweater shirt. The complainant could see the train platform and observed no one else in the vicinity of the boys.

The complainant put her head back down and, as she did, felt a burning sensation in her finger and saw a broken glass on the street next to her. She believed that the bottle had been thrown from the direction where she had observed respondent and his companions. She did not see who threw the bottle or its flight. When she looked back in the direction from which the bottle had come, she saw respondent and the other two boys running away. She saw no one else in the vicinity.

The complainant felt pain and observed that her hand was bleeding. She then ran upstairs to the train station. As the token clerk was opening the door to let her into the station, the boy in the green shirt came running down from the platform and bumped into the complainant. She said to him, "Look what you all did to my hand." He responded, "Miss, it's not me." While he was saying this, the complainant saw respondent and the other boy running down from the train platform. Upon seeing her, they all ran back up to the platform where she followed them.

When she reached the platform, all three boys were there and the train had just arrived. The complainant asked the conductor, "Could you please hold the train? I'm looking for someone. The police is [sic] coming." The boys entered the train and immediately split up. The complainant entered the train with the police and found respondent on the other side of the train with his back toward her. The boy in the blue shirt was standing by himself next to an exit door. The boy in the green shirt was not found. Respondent and the one boy were arrested.

Viewing the entirely circumstantial evidence in a light most favorable to petitioner (*see*, *People v Karpowski*, 99 AD2d 118, 123), the evidence does not exclude to a moral certainty the

hypothesis of respondent-appellant's innocence and, thus, a prima facie case has not been made out (*People v La Belle*, 18 NY2d 405, 412). At the fact-finding hearing, the complainant testified that she did not see anyone throw the bottle, had not seen its flight, and only believed that it had come from the direction of respondent and his companions. The complainant concluded that respondent or one of his friends had thrown the bottle because they had laughed at her when she was nearly struck by a bus, appeared to be alone on the train platform above, and ran when she pursued them. There was no evidence presented that respondent or his companions ever possessed a glass bottle or that they threw one. Indeed, not having seen the flight of the bottle, there was no evidence that the bottle actually came from respondent's direction. An alternative hypothesis that the bottle was propelled when struck by the tire of a bus or car or thrown by someone the complainant could not see can certainly not be excluded to a moral certainty, as required before a finding of guilt.

Respondent was charged with acting in concert with his companions. However, even if one of the others had thrown the bottle, there was no evidence that respondent shared the mental culpability of his companion or solicited, requested, commanded, importuned, or intentionally aided his companion to throw the bottle (Penal Law § 20.00). If one of the other boys threw the bottle, it is certainly just as reasonable to hypothesize that the act was spontaneous, unplanned and done without consultation or thought to the consequences.

Accordingly, inasmuch as the evidence adduced by the presentment agency did not exclude to a moral certainty the hypothesis of respondent's innocence, no prima facie case was established and the order appealed from is reversed and the petition dismissed. Concur—Murphy, P. J., Ellerin, Kupferman, Ross and Mazzarelli, JJ.